

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 26, 1962

Mr. Bruce Allen
County Attorney
Waxahachie, Texas

Opinion No. WW-1395

Re: Whether a taxpayer is enti-
tled to discount under Arti-
cle 7255-b, Vernon's Civil
Statutes, or whether he must
pay interest and penalty un-
der submitted facts.

Dear Mr. Allen:

We quote the following excerpt from your letter requesting
the opinion of this office on the above captioned subject.

"On October 20, 1961, a taxpayer
mailed his check to the Tax Assessor-
Collector of Ellis County in the amount
of $143.49 along with an application for
a poll tax receipt for him and his wife.
Included in the $143.49 were $3.00 (which
should have been $3.50) in payment of the
two poll taxes. Immediately upon receipt
of this check the Tax Assessor-Collector
returned it and the application for poll
tax receipt to the taxpayer with a note
explaining that the check should be in
the amount of $144.00 in order to pay
the ad valorem taxes and the two poll
taxes. The taxpayer did not open the
letter from the Tax Assessor-Collector
until May 5, 1962, when he was searching
for his poll tax receipt in order that
he and his wife might vote.

"It is the taxpayer's position that
he should be allowed the discount under
Art. 7255b,[1] Vernon's Civil Statutes.

---

[1] Article 7255b, V.C.S. provides, in part, as follows:

"All taxpayers shall be allowed discounts for the
payment of taxes due to the State and all governmental
and political subdivisions and taxing districts of the
State, said discounts to be allowed under the following
conditions: (a) three (3%) per cent discount on ad

(Continue)

> While the Tax Assessor-Collector feels
> that he is not entitled to the discount
> and further that he owes the penalty and
> the interest under the Art. 7336 Vernon's
> Civil Statutes. [2]

---

[1] (Cont'd)

valorem taxes due the State or due any governmental or political subdivision or taxing district of the State, if such taxes are paid ninety (90) days before the date when they would otherwise become delinquent; (b) two (2%) per cent discount on ad valorem taxes due the State or due any governmental or political subdivision or taxing district of the State if such taxes are paid sixty (60) days before the date when they would otherwise become delinquent; (c) one (1%) per cent discount on ad valorem taxes due the State or due any governmental or political subdivision or taxing district of the State, if such taxes are paid thirty (30) days before the date when they would otherwise become delinquent. . . ."

[2] Article 7336, V.C.S., provides, in part, as follows:

". . .

"If any person fails to pay one-half (1/2) of the taxes, imposed by law upon him or his property, on or before the thirtieth day of November of the year for which the assessment is made, then unless he pays all of the taxes (imposed by law on him or his property), on or before the thirty-first day of the succeeding January, the following penalty shall be payable thereon, to-wit: During the month of February, one (1%) per cent; during the month of March, two (2%) per cent; during the month of April, three (3%) per cent; during the month of May, four (4%) per cent; during the month of June, five (5%) per cent; and on and after the first day of July, eight (8%) per cent.

". . .

"(d) All delinquent taxes shall bear interest at the rate of six (6%) per cent per annum from the date of their delinquency. . . ."

> "Please advise if the taxpayer should
> be allowed the discount as contended or
> is he required to pay the interest and
> penalty as a delinquent taxpayer."

In Attorney General's Opinion No. WW-149, this office held that where a taxpayer had failed to receive a notice of the amount of ad valorem taxes due for a certain year by reason of the fact that it had been sent to a wrong address, the Tax Assessor-Collector had no authority to waive penalties and interest which had accrued subsequent to the time the taxes were due and prior to the time payment was tendered by the taxpayer. In that opinion it was pointed out that nowhere in the Constitution or statutes of this State is a Tax Assessor-Collector required to notify a taxpayer of the amount of ad valorem taxes assessed against him and his property on the current roles as a prerequisite to liability to pay the taxes or the statutory penalties and interest if the taxes are permitted to become delinquent.

In Muldrow v. Texas Frozen Foods, 157 Tex. 39, 299 S.W.2d 275 (1957), the Supreme Court held that a check delivered to the collecting official on the last day allowed for payment of a corporate franchise tax, but thereafter returned unpaid by the drawee bank, did not effect a timely payment of taxes even though the instrument was dishonored solely because of a mistake on the part of the bank and was paid when presented for payment a second time. In the course of this opinion, the court said at page 277:

> "The real issue in the case is whether
> the tax was paid when due. Respondent
> recognizes that if timely payment was not
> made, the penalty accrued by operation of
> law and could not be waived by any offi-
> cial of the State. It is apparent that
> the money did not become available to the
> State until the check was paid on July 18th,
> but respondent contends that in legal con-
> templation payment was made when the check
> was delivered to the Secretary of State."

The court pointed out that it was generally held that in dealings between private individuals when a check is accepted as conditional payment and is paid in due course, the payment thereupon becomes absolute and relates to the date of delivery of the check. [3] The court stated that the application of this principle

---

[3] Citing Texas Mutual Life Ins. Ass'n. v. Tolbert, 134 Tex. 419, 136 S.W.2d 584; 70 C.J.S. Payment, Sec. 24, p. 233; 40 Am.Jur. Payment, Sec. 86, p. 775.

to the payment of taxes had been recognized in jurisdictions authorizing the payment of such obligations by check. The court further pointed out that in at least in one jurisdiction the doctrine of relation back was employed even though the check was dishonored as a result of a mistake on the part of the bank. However, the court refused to extend the rule generally recognized as applicable to individuals to payments of taxes by check since in the absence of a constitutional or statutory provision authorizing payment in some other medium, taxes must always be paid in money. The court said that a use of a check to pay taxes was always at the risk of a taxpayer, for whose accomodation the receiving official acts in attempting to collect the same.

In the instant case, the taxpayer had the right to pay, in November, one-half of all the tax owed; and had the remainder been paid before the first day of the following February, no penalty or interest would have accrued. However, the taxpayer made the mistake in calculating the amount of the tax due. The Tax Assessor-Collector did all he could do, under the circumstances, when he notified the taxpayer by mail of the discrepancy in the amount of the check and the amount of the taxes sought to be paid. Hence, in this case, we must conclude in view of the Muldrow case, that the penalty and interest cannot be waived or released by the Tax Assessor-Collector.

## S U M M A R Y

Where taxpayer mailed a check in an amount insufficient to cover ad valorem taxes and poll taxes, and Tax Assessor-Collector returned the check by mail to the taxpayer because of such insufficiency, and taxpayer neglected to open said mail until after penalties and interest had accrued, the Tax Assessor-Collector has no authority to waive such penalties and interest as have accrued.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Marietta McGregor Payne
Marietta McGregor Payne
Assistant

MMcGP/jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

John Reeves
Morgan Nesbitt
Grady Chandler
Coleman Gay

REVIEWED FOR THE ATTORNEY GENERAL
By:   Leonard Passmore